## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| 1. | ELIZABETH CONFER, | ) | |
| | | ) | |
| | Plaintiff, | ) | |
| | | ) | |
| v. | | ) | Case No. CIV-12- 677-C |
| | | ) | |
| 1. | C.H. ROBINSON COMPANY, INC., | ) | JURY TRIAL DAMANDED |
| | | ) | |
| 2. | C.H. ROBINSON WORLDWIDE, INC.,) | | ATTORNEY LIEN CLAIMED |
| | | ) | |
| | Defendants. | ) | |

## COMPLAINT

**COMES NOW THE PLAINTIFF** and hereby pleads her claims as follows:

## PARTIES

1.    The Plaintiff is Elizabeth Confer, an adult resident of Oklahoma County, Oklahoma.

2.    The Defendants are:

    A.    CH. Robinson Company, Inc. ("Defendant Company"), a company doing business in Oklahoma County, Oklahoma; and

    B.    C.H. Robinson Worldwide, Inc. ("Defendant Worldwide"), a company doing business in Oklahoma County, Inc.

## JURISDICTION AND VENUE

3.    Plaintiff's causes of action are for gender discrimination (including gender plus age), sexual harassment and retaliation after Plaintiff complained of such harassment and discrimination, in violation of Title VII of the Civil Rights Act; age discrimination and retaliation after Plaintiff complained of age discrimination, in violation of the Age Discrimination in Employment Act; disability discrimination including retaliation for Plaintiff's requests for reasonable accommodation, in violation of the Americans with Disabilities Act; and interference with Plaintiff's rights under the Family Medical

-1-

Leave Act and retaliation after Plaintiff exercised her rights, in violation of the FMLA. The actions described above also violate Oklahoma's Anti-Discrimination Act, 25 O.S. §§ 1101, 1901, *inter alia*. and Oklahoma's public policy. Jurisdiction over the federal claims is vested pursuant to 29 U.S.C. 626(c) and 28 U.S.C. § 1331.

4. Jurisdiction over the federal claims is vested in this Court under and 28 U.S.C. § 1331. The state law claims arise out of the same core of facts and jurisdiction over them is vested under 28 U.S.C. § 1367(c). All of the actions complained of occurred in Garvin County, Oklahoma, and the Defendant may be served in that county. Garvin County is within the Western District of the United States District Court of Oklahoma and venue is appropriate in this Court under 42 U.S.C. § 2000e-5(f)(3) , and 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. At the time of her discharge, Plaintiff had worked for the Defendants at least twelve (12) months and had worked at least twelve hundred fifty (1250) hours during the twelve (12) months prior to her termination.

6. At the time of Plaintiff's discharge, Defendant employed at least fifty (50) or more employees within seventy five (75) road miles of Plaintiff's work location during each of at least twenty (20) weeks during the calendar year of Plaintiff's termination. Defendant was a covered employee under the ADA, ADEA, Title VII and the FMLA.

7. At the time of her discharge, Plaintiff had not utilized more than twelve (12) weeks of FMLA leave during the prior twelve (12) calendar months.

8. Plaintiff's pay stubs reflect Defendant Company as her employer. Personnel decisions related to Plaintiff's termination and medical related leave were made by Defendant Company and Defendant Worldwide.

9. Holly Williams, the person who terminated Plaintiff's employment, identifies herself as a supervisor of Defendant Worldwide. Defendant Worldwide creates and

distributes the personnel manuals, including the disciplinary policies, applicable to employees of both Defendants, including the Plaintiff.

10. For the reasons set out in paras. 8-9, above, both Defendants Company and Worldwide constitute joint employers or an integrated enterprise such that both are liable for the claims herein.

11. Plaintiff was employed by the Defendants from around October 27, 2010.

12. Plaintiff's job duties included contacting inbound calls from truck drivers, gathering their personal and load information and entering such information into the Defendant's computer system. Plaintiff fields about ninety calls per day and is talking on the telephone the majority of each eight hour work-day.

13. Around the summer of 2011 Harold Brewer became Plaintiff's supervisor.

14. Mr. Brewer subjected the Plaintiff and other employees to sexual harassment including, but not limited to:

    A. On a daily basis Mr. Brewer would stand very close to women, including Plaintiff, looking down their shirts and staring at their breasts. Mr. Brewer's conduct was obvious to those around him as being sexually inappropriate.

    B. Several times per week Mr. Brewer would comment about desiring to go to a motel with female employees during the lunch hour;

    C. Plaintiff observed Mr. Brewer touching other female employees, once touching a female's tattoo on her breast;

    D. On at least two occasions Mr. Brewer made sexual type comments to the Plaintiff, including commenting on the size of Plaintiff's breasts and commenting that he didn't like Plaintiff covering herself with clothing.

15. The conduct described in para. 14, above, was unwelcome and offensive to the Plaintiff.

16. Around the end of summer, 2011, Plaintiff complained to her supervisor, who took

-3-

no action and did not stop the harassment.

17.   A few weeks later Plaintiff complained of the sexual harassment directly to Howard Brewer.  In response, Mr. Brewer said, "You should feel lucky that a woman of your age has a job in this economy."

18.   Plaintiff complained of Mr. Brewer's ageist comment to her supervisor.

19.   After Plaintiff's complaints of sexual harassment and Mr Brewer's ageist comment, Plaintiff applied for two separate supervisory positions known as "Lead" or "Team Lead".

20.   Plaintiff was qualified for the positions in terms of experience and education and was physically able to perform the job duties of the positions.

21.   Plaintiff was denied both positions.

22.   The persons chosen for the positions were both at least ten years younger than the Plaintiff.

23.   Plaintiff was told she was denied the positions because she did not have a bachelor's degree, however the persons chosen for the positions did not have bachelors degrees.

24.   Also after Plaintiff's complaints the Defendant retaliated against her by writing her up for reasons which were false.  For instance, around December 19, 2011, Defendant disciplined Plaintiff for taking a lunch more than an hour long.  This reason was false as Plaintiff never took a lunch break of this duration without prior approval.

25.   Between January and March 2012 Plaintiff was required to take off work periodically to undergo medical procedures to correct infections and other medical conditions which resulted in Plaintiff suffering gum damage, tooth loss and Plaintiff's teeth dying.  Without medical intervention Plaintiff's medical condition would likely have resulted in significant damage to her eye sight, additional tooth and tissue loss and damages.

26.   Plaintiff's  medical  condition  resulted  in  the  following  non-exhaustive  list  of

limitations:

    A.    Plaintiff was significantly impaired in her ability to work because Plaintiff was often unable to talk to customers who called in to the facility;

    B.    Plaintiff was significantly impaired in her ability to eat and unable to eat hard or crunchy food;

    C.    Plaintiff's eye sight was significantly impaired requiring her to wear glasses in addition to contacts and a loss of ability to see clearly.

27.    As a result of the limitations set out in Paras. 25-26, above, Plaintiff suffers from a disability as defined by the Americans with Disabilities Act in that she suffers from a condition which materially impairs a major life activities as defined by 42 U.S.C. § 12102(1)(A), (2)(B) and/or is regarded as having such impairment as defined by 42 U.S.C. § 12102(1)(C), (3).

28.    At the least Defendant perceived Plaintiff as having a disability and made comments about Plaintiff's condition affecting her ability to perform her job duties.

29.    Around January 27, 2012, Plaintiff underwent surgical procedures to remove the teeth that had died as the result of her medical condition.

30.    Plaintiff timely requested off work to undergo the surgical procedures.

31.    Around January 31, 2012, Plaintiff asked her supervisor, Elizabeth Lamb, if she could leave early because Plaintiff's medical condition (described in paras. 25-26, above) was causing Plaintiff to bleed from her mouth, resulting in Plaintiff's inability to talk.

32.    Ms. Lamb told Plaintiff to take off work, but that she would be disciplined for leaving her shift early.

33.    Plaintiff also requested off work on approximately six more days between January and February, 2012 for similar medical issues.  Defendant disciplined Plaintiff for each period she took off work.

34.    Defendant refused to provide Plaintiff with her rights under the FMLA and refused

to allow Plaintiff to utilize her leave as FMLA leave for these absences.

35.    Around March 11, 2012 Plaintiff fell and suffered injuries to her back and head.

36.    As a result of her injury, Plaintiff suffered damages to her spine and soft muscle tissue.  Since her injury Plaintiff has been, and currently is, substantially impaired in the following (non-exhaustive):

    A.    Without remedial measures Plaintiff would be unable to walk more than a few feet;

    B.    Without remedial measures Plaintiff would be unable to sleep due to the pain from her condition;

    C.    Plaintiff is unable to lift more than about ten pounds at a time.

37.    As a result of Plaintiff's injuries she was unable to work on her next scheduled shift which was about March 12, 2012.

38.    Plaintiff notified her employer prior to her shift that she would not be able to report to work.

39.    Plaintiff notified her employer each day thereafter that she would be unable to report to work due to her medical condition.

40.    Plaintiff offered to produce doctor notes confirming her inability to return to work, however Defendant refused to accept such documentation.

41.    Around March 14, 2012 Plaintiff asked to return to work with the reasonable accommodations of being allowed to stand while talking on the phone or, in the alternative, for a side-stand that would hold Plaintiff's call-center equipment, as well as the ability to occasionally walk around her work-center.

42.    Defendants refused Plaintiff's proposed accommodations and refused to engage in an interactive process to determine whether Plaintiff could be accommodated.

43.    Around March 30, 2012 Plaintiff received a letter notifying her that she had been terminated and that such termination would be effective as of March 9, 2012.

-6-

44.  Motivating factors for Plaintiff's termination were her disability (including Plaintiff's record of a disability and/or Defendants regarding Plaintiff as being disabled), retaliation for Plaintiff's requests for reasonable accommodations, Plaintiff's age and/or her complaints of age discrimination, and/or Plaintiff's gender (including age plus gender) and her complaints and opposition to sexual harassment.  At the least these factors were part of a mixture of motives for the termination such that Plaintiff is protected  by the mixed motive doctrine.

45.  As a direct result of Plaintiff's termination she has suffered, and continues to suffer, lost wages (including past, present and future wages along with the value of benefits associated with such wages) and dignitary harm/emotional distress damages including worry, anxiety, sleeplessness, stress and other similar, unpleasant emotions.

46.  Plaintiff has exhausted her administrative remedies by timely filing a charge of discrimination with the EEOC on May 29, 2012.  The EEOC issued Plaintiff her right to sue letter on June 7, 2012 and Plaintiff received such letter thereafter.

## COUNT I

For Plaintiff's first cause of action she incorporates the allegations set forth above and further provides that:

47.  Age discrimination including retaliation after Plaintiff complained of such discrimination, is contrary to the ADEA, the OADA and Oklahoma's public policy.

48.  Under the ADEA Plaintiff is entitled to compensation for his lost earnings, past, present and future and for the value of the benefits associated with such earnings.

49.  Because the actions of the Defendants were willful as defined by the ADEA, Plaintiff is entitled to liquidated damages in an amount equal to her wage and benefit loss through the time of his trial under the ADEA claim and punitive damages under the public policy claim.

50.  Plaintiff is entitled to emotional distress damages under Oklahoma's public policy and

under the ADEA for the retaliatory termination.

51.     Plaintiff is also entitled to an award of attorney fees and costs.

## COUNT II

For Plaintiff's second cause of action she incorporates the allegations set fourth above and further provides that:

52.     Discrimination on the basis of a disability or perceived disability, and retaliation for Plaintiffs' requests for accommodation is contrary to the ADA, the OADA/OHDA and Oklahoma's public policy.

53.     Refusal to engage in an interactive process to attempt to accommodate the Plaintiff is a *per se* violation of the ADA.

54.     Under this Count Plaintiff is entitled to compensation for her lost earnings, past, present and future (and for the value of the benefits associated with such earnings), dignitary harm damages, and attorney fees and costs.

55.     Because the actions of the Defendants were willful, malicious or, at the least, in reckless disregard for Plaintiff's federally and state protected rights such that Plaintiff is entitled to an award of punitive damages under both federal and Oklahoma law.

## COUNT III

For Plaintiff's third cause of action she incorporates the allegations set forth above and further provides that:

56.     Gender discrimination, including subjecting Plaintiff to a sexually hostile working environment and retaliating against Plaintiff (including failing to promote and terminating her employment) violates Title VII, the OADA and Oklahoma's public policy.

57.     Under this Count Plaintiff is entitled to compensation for her lost earnings, past, present and future (and for the value of the benefits associated with such earnings), dignitary harm damages, and attorney fees and costs.

58. Because the actions of the Defendants were willful, malicious or, at the least, in reckless disregard for Plaintiff's federally and state protected rights such that Plaintiff is entitled to an award of punitive damages under both federal and Oklahoma law.

## COUNT IV

For Plaintiff's forth cause of action she incorporates the allegations set forth above and further provides that:

59. Interference with and retaliation against the Plaintiff for Plaintiff's exercise of her rights under the FMLA is a violation of the FMLA.

60. Defendants' actions were willful as defined by the FMLA.

61. As a result of this deprivation of Plaintiff's FMLA rights, she has suffered injury and is entitled to actual and equitable damages including lost wages (past, present and future and for the value benefits associated with such earnings), pre-judgment interest, attorney fees and costs.

62. Because the actions of the Defendants were willful, Plaintiff is entitled to an award of liquidated damages.

## PRAYER

Plaintiff respectfully requests this Court enter judgment in her favor and against the Defendants and grant her all compensatory damages suffered together with punitive damages, liquidated damages, attorneys' fees, costs and interest and such other legal and equitable relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED THIS <u>14th</u> DAY OF JUNE, 2012.**

HAMMONS, GOWENS, HURST
& ASSOCIATES

s/Amber L. Hurst
Mark Hammons, OBA #3784
Amber L. Hurst, OBA # 21231
HAMMONS, GOWENS & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone:  (405) 235-6100
Facsimile:  (405) 235-6111
Amberh@hammonslaw.com
*Counsel for Plaintiff*
JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED